UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
:
UNITED STATES OF AMERICA, :
: **MEMORANDUM**
      Plaintiff/Appellant/Cross-Appellee, : **DECISION AND ORDER**
:
          - against - : 11 Civ. 5608 (BMC)
:
EDWARD P. BOND, Liquidating Trustee of :
the LIQUIDATING TRUST FOR PT-1 :
COMMUNICATIONS, INC., PT-1 LONG :
DISTANCE, INC. AND PT-1 :
TECHNOLOGIES, INC. :
:
      Defendant/Appellee/ Cross-Appellant. :
:
----------------------------------------------------------X

**COGAN,** District Judge.

    Before the Court is the Liquidating Trustee's ("Trustee") motion for (a) an order enforcing the Court's Corrected Memorandum Decision and Order dated September 17, 2012 (the "September 2012 Decision"), and (b) either a clarification of the September 2012 Decision or an indicative ruling under Rule 62.1 of the Federal Rules of Civil Procedure. The factual and procedural history of this appeal from the United Stated Bankruptcy Court for the Eastern District of New York is set out at length in the September 2012 Decision and familiarity with the decisions in this action is presumed. For the reasons set forth below, the Trustee's motion is granted in part and denied in part.

## DISCUSSION

    The instant motion arises because of an ambiguity in the September 2012 Decision. In that decision, I held that although "the Bankruptcy Court correctly calculated the Trustee's tax overpayments[,]" United States v. Bond, 486 B.R. 9, 42 (E.D.N.Y. 2012), the Bankruptcy Court erred when it relied upon the *res judicata* effect of the confirmed bankruptcy plan to enjoin the

United States (hereinafter, the "IRS") from the exercise of setoff and recoupment rights. Relying on principles of sovereign immunity, I held that the portion of the Bankruptcy Court's Final Order "enjoining the IRS from exercising any future right of setoff or recoupment is vacated." Id. at 45. The September 2012 Decision did not, however, modify or amend the Bankruptcy Court's Final Order, nor did it remand the case to the Bankruptcy Court for further proceedings.

The IRS takes the position that when the September 2012 Decision held that the Bankruptcy Court was without jurisdiction to enjoin the IRS's future exercise of its recoupment and setoff rights, it preserved the IRS's ability to attempt to recoup taxes arising out of PT-1's 2001 pre-petition sale of assets – particularly its calling card business – to IDT Corporation ("IDT"). The Trustee, on the other hand, takes the position that the September 2012 Decision represents a final judgment against the government based on PT-1's tax overpayment. It argues that the September 2012 Decision "did not intend to permit the IRS to re-litigate issues arising out of the tax reporting of the IDT transaction and the settlement which followed" because, according to the Trustee, the September 2012 Decision "expressly affirmed the Bankruptcy Court on these issues." The Trustee states that although it "has no disagreement with the Court's decision as to prospective application of the confirmation order . . . it does seem illogical to understand the [September 2012 Decision] as providing the IRS the right to exercise a right of recoupment with respect to a discharged claim."

Before turning to the merits of the parties' competing interpretations of the September 2012 Decision, a threshold issue with regard to this motion is whether, and to what extent, this Court may grant the relief that the Trustee seeks. The IRS appealed from those portions of the September 2012 Decision that affirmed the Final Order of the Bankruptcy Court and the Trustee appealed, among other things, the portion of the September 2012 Decision that reversed the

2

Bankruptcy Court's injunction barring the IRS from the future exercise of rights of recoupment and setoff. The IRS later withdrew its appeal, but the Trustee's appeal remains pending in the U.S. Court of Appeals for the Second Circuit.

"Generally, the filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Whitaker v. New York Univ., No. 09 Civ. 8410, 2012 WL 2369510, at *2 (S.D.N.Y. June 20, 2012) (internal alterations and quotation marks omitted). Rule 62.1 of the Federal Rules of Civil Procedure, however, "provides a mechanism for the Court to provide an indicative ruling where relief is otherwise barred by a pending appeal." Thomas v. City of New York, __ F.R.D. __ , 2013 WL 2420815, at *4 n.4 (S.D.N.Y. June 4, 2013). Specifically, the Rule provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a).

The IRS contends that Rule 62.1 is not available because relief under Rule 62.1 is related to Fed. R. Civ. P. 60(b) and Rule 60(b) cannot apply because this action is not a plenary civil action subject to the Federal Rules of Civil Procedure but is, instead, a bankruptcy appeal to the district court and thus subject to part VIII of the Federal Rules of Bankruptcy Procedure. The only form of reconsideration in a bankruptcy appeal is a motion for a rehearing under Bankruptcy Rule 8015, which must be filed within 14 days after entry of judgment in the district court. The only authority that the IRS cites to support this argument predates the adoption of Rule 62.1. See In re Butler, 2 F.3d 154 (5th Cir. 1993). The Court, on the other hand, has not

3

located any authority suggesting that Rule 62.1 does not apply when a district court hears an appeal from a bankruptcy court.

In fact, the cases suggest the opposite conclusion, namely that district courts may utilize Rule 62.1 even when hearing appeals from the bankruptcy courts. The proceedings in In re Johnson, No. 10-12873, 2011 WL 7637217 (E.D. Mich. June 14, 2011), are instructive. There, the bankruptcy court issued an order that extinguished a lien on the debtor's tax refund but found that the refund was the property of a judgment creditor. The district court reviewed the bankruptcy court's order on appeal, affirming in part and reversing in part. After the judgment creditor appealed the district court's ruling to the Sixth Circuit, the parties filed in the district court a joint motion for an indicative ruling under Rule 62.1 with regard to how the district court would rule on a motion under Rule 60(b) to vacate its prior ruling in light of the parties' negotiation of a settlement. After the district court granted the Rule 62.1 motion, the Sixth Circuit remanded the case to the district court, and the district court vacated its prior ruling. Thus, the provisions of Rule 62.1 are available to this Court even though this matter is an appeal from the bankruptcy court rather than a plenary civil proceeding. See also Hoffman v. Lloyd, No. C-12-0198, 2012 WL 4857799 (N.D. Cal. Oct. 11, 2012) (construing a *pro se* litigant's motion as a request for an indicative ruling under Rule 62.1, even though the litigant had already filed a notice of appeal to the Ninth Circuit, and indicating that the district court would not be willing to grant the litigant relief under Rule 60(b) from the district court's order adopting the bankruptcy court's proposed findings of fact and conclusions of law that the litigant was in default).

Therefore, to the extent the Trustee's motion requests an indicative ruling under Rule 62.1 or clarification, the motion is granted. The Court does not agree, however, with the

interpretation of the September 2012 Decision that the Trustee advocates and, for that reason, denies the Trustee's motion to the extent that it seeks an order enforcing the Court's September 2012 Decision pursuant to Rule 69(a)(1) and to the extent that it seeks to bar additional litigation in connection with taxes on the IDT transaction.

In its Final Order, which was appealed to this Court, the bankruptcy court held, among other things, that the Trustee was entitled to recover a tax overpayment of $3,806,512, plus statutory and certain paid-in interest, for the tax period of March 9, 2001 through December 31, 2001 (the "Short Year").  As discussed, this Court reversed the bankruptcy court on appeal only to the extent that it precluded the IRS from exercising its future rights of setoff and recoupment. The Trustee states that it "did not understand the Court's reversal of the Bankruptcy Court to permit the IRS, through arguments of recoupment, set-off or otherwise, to revisit the IDT transaction or to allow it to withhold payment on account of the Final Order."

However, nothing in the September 2012 Decision precludes, nor did the Court intend its rulings to preclude, the IRS from exercising its rights of recoupment with regard to all aspects of PT-1's potential tax liability in connection with the IDT transaction.  Admittedly, the Court affirmed the bankruptcy court's ruling not to reopen the record and allow the IRS to proffer certain documents that, it contended, evidenced a higher sale price for PT-1's pre-paid calling card business to IDT.[1]  As a result, this Court affirmed as not clearly erroneous the bankruptcy court's factual finding that PT-1 did not fail to report income related to the IDT transaction on its "Stub Period" tax return and its consequent calculation of the tax overpayment due to the Trustee for the 2001 Short Year.

---

[1] These documents included the sale agreement between PT-1 and IDT, an adversary complaint that PT-1 filed against IDT, and a related settlement agreement.

5

But that is not the whole story. In 2004, prior to the confirmation of its Chapter 11 bankruptcy plan, PT-1, as debtor in possession, settled its adversary litigation against IDT. The IRS maintains that this litigation encompassed PT-1's 2001 sale of its credit card business to IDT, as well as other matters. Pursuant to the settlement, PT-1 received IDT common stock to be sold in installments with a guaranteed minimum value of $14.3 million. The IRS claims that PT-1 was required to report the $14.3 million guaranteed minimum value of the stock it received on its 2004 tax return, but did not do so.[2] Instead, in December 2012, shortly after the September 2012 Decision, PT-1 belatedly filed its 2005 tax return which reported the $14.3 million settlement for the first time. According to the IRS, by filing this way, PT-1 was able to fully shelter the $14.3 million within larger post-confirmation losses. Since tax has not been assessed on the $14.3 million, the IRS maintains that it can apply its rights of setoff and recoupment to reduce PT-1's tax over payment by any assessed tax. To that end, the IRS has filed a separate suit for recoupment and setoff against the Trustee in this Court. See United States v. Bond, No. 13 Civ. 3414 (E.D.N.Y.).[3]

It is not appropriate for the Court to opine on the ultimate merits of the IRS's claims for recoupment and set off in the context of this motion. Determining whether those claims apply is a fact-intensive inquiry, see In re Malinowski, 156 F.3d 131, 135 (2d Cir. 1998), and important facts relating to PT-1's 2005 tax return are not in the record on appeal. Rather, all the Court need determine is whether, if the Second Circuit affirms the September 2012 Decision's holding that the IRS may exercise its future rights of setoff and recoupment, the IRS may assert those

---

[2] The IRS concedes that the final allocation of the $14.3 million settlement among the various causes of action in the adversary complaint is currently not certain, but asserts that almost all of this sum is allocable to causes of action that are related to PT-1's sale of its calling card business to IDT.

[3] The IRS also seeks what it characterizes as an already assessed penalty for PDT's failure to make estimated quarterly tax payments for the . . . 2001 Short Year."

6

rights in connection with the $14.3 million settlement and the associated penalties for PT-1's failure to pay quarterly estimated taxes for the 2001 Short Year (the "QET Penalties").

The Court agrees with the IRS and concludes that the IRS may assert its setoff and recoupment rights in connection with the $14.3 million settlement and the QET Penalties.[4] Recoupment is a potentially expansive remedy: "[T]he doctrine of equitable recoupment in federal tax jurisprudence allows a court in limited situations to disregard a statute of limitations in order to further 'the public interest that no one should be permitted to avoid his just share of the tax burden except by positive command of law.'" IES Indus., Inc. v. United States, 349 F.3d 574, 581 (8th Cir. 2003) (quoting Stone v. White, 301 U.S. 532, 57 S. Ct. 851 (1937)). Indeed, under certain circumstances, "equitable recoupment allows the IRS to set off a refund due a taxpayer for one tax year by an underpayment from a different year." Id.

Nothing in the September 2012 Decision or the other decisions in this litigation would operate as a *res judicata* bar to this remedy. Although this Court affirmed the bankruptcy court's denial of the IRS's motion to introduce evidence of PT-1's settlement of the IDT adversary complaint, the rationale behind that ruling was that, in light of the IRS's untimely proffer of that evidence, its exclusion was within the bankruptcy court's discretion. But it was not the intent or the effect of the September 2012 Decision to immunize the proceeds of the IDT settlement from the IRS's powers of setoff and recoupment. Indeed, that interpretation would render the September 2012 Decision's reversal of the bankruptcy court functionally meaningless.

If the IRS can demonstrate a tax underpayment in 2004 based on the $14.3 million settlement, it may be able to setoff that underpayment against any refund due for the 2001 Short

---

[4] The IRS cannot, however, exercise these rights in connection with PT-1's tax liability for 2002. In the September 2012 Decision, this Court affirmed the bankruptcy court's ruling that PT-1 was discharged from liability for unpaid 2002 taxes because the IRS did not timely respond to PT-1's request for a determination of unpaid tax liability pursuant to 11 U.S.C. § 505(b)(2).

7

Year. And, although the bankruptcy court disallowed the IRS's claim based on the QET Penalties because the claim was filed after the administrative claim bar date, the September 2012 Decision preserved the IRS's future rights of setoff and recoupment and the QET Penalties may well be subject to recoupment. See <u>Dysart v. United States</u>, 340 F.2d 624, 626 n.1 (Ct. Cl. 1965) ("In this case, the recoupment involves the same taxpayers and the same tax year as the principal claim; the tax penalty is an addition to the tax, and as such is considered as part of the income tax for the taxable year.").

## CONCLUSION

The Trustee's motion [29] is granted in part and denied in part as set forth above.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
October 31, 2013